UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| EILEEN FOWLER, ) | |
| ) | |
| Plaintiff ) | Criminal No. 15-71-GFVT |
| ) | |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| COAST TO COAST HEALTH CARE ) | **ORDER** |
| SERVICES, INC., ) | |
| | |
| Defendant | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Defendant Coast to Coast Health Care Services' Motion to Dismiss and Motion for Limited Stay. [R. 5, 8.] The Defendant argues that Plaintiff Eileen Fowler's complaint, which alleges (1) unlawful retaliation resulting in her termination and (2) intentional interference with a business relationship, fails at the pleading stage. For the reasons set forth below, the Defendant's Motion to Dismiss is GRANTED IN PART, and its related Motion for Limited Stay is DENIED.

I

Between October 2012 and January 2015, Fowler served as the Director of Clinical Services at New Horizons Health Systems ("New Horizons"), a hospital located in Owenton, Kentucky. [R. 1 at 2-3.] Defendant Coast to Coast Healthcare Services[1] ("Coast to Coast") provided physicians to staff the emergency room at New Horizons. [R. 1 at 2.] Fowler

---

[1] Coast to Coast is an Ohio corporation with its principal place of business in Ohio, and Fowler is a citizen of Kentucky. Fowler therefore brought this action pursuant to 28 U.S.C. § 1332 because the Plaintiff's state of citizenship is different from the Defendant's and the amount in controversy exceeds $75,000. [R. 1 at 1.]

alleges that, in February 2014, one of Coast to Coast's physicians "refused to treat an individual that had come to the emergency room." [*Id.* at 1-2.] Concerned that this refusal violated federal law "and otherwise demonstrated poor quality of care," she reported the incident to the CEO of New Horizons. [*Id.*] Later, in June 2014, Coast to Coast submitted an insurance claim for services provided to Fowler's husband following a cataract surgery. Fowler states that, because the "Defendant did not provide any services relative to Mr. Fowler's cataract surgery," she reported to her insurance provider and to Coast to Coast "concerns that the Defendant had made a fraudulent claim for payment in violation of KRS § 304.47-020." [R. 1 at 3.] Finally, on or around December 2014, Fowler "submitted certain patient files [from New Horizon] for peer review." [*Id.*] Following this evaluation, the peer reviewers prepared a report that purportedly criticized the care provided by one of Coast to Coast's physicians. [*Id.*] Fowler subsequently presented this report to New Horizons' Medical Executive Committee. [*Id.*]

The following month, Fowler alleges that Coast to Coast "sent a letter to New Horizons expressing its intent to terminate its contract with New Horizons, in large part because of 'slanderous and libelous comments by New Horizons staff about Coast to Coast.'" [*Id.*] Approximately one week later, New Horizons terminated Fowler's employment. She thereafter brought an action in this Court, claiming that (1) Coast to Coast retaliated against her for reporting "quality of care issues" in violation of KRS 216B.165, and (2) the "Defendant intentionally . . . interfered with the business relationship between Plaintiff and New Horizons by misrepresenting to New Horizons that Plaintiff had made 'slanderous and libelous comments . . . about Coast to Coast' and/or by threatening to terminate its relationship with New Horizons." [*Id.* at 5.]

On November 1, 2015, Coast to Coast filed the present Motion to Dismiss. [R. 5.] The

2

Defendant argues, *inter alia*, that (1) Coast to Coast is not Fowler's employer, and thus KRS §216B.165 creates no cognizable right of action against the company, and (2) Fowler's intentional interference claim fails because she was an at-will employee of New Horizons. On February 3, 2016, Coast to Coast further maintained that, "[g]iven the fatal flaws in Ms. Fowler's claims," the Court should "prevent wasting [the] time and effort of all concerned" by staying discovery pending resolution of the Defendant's Motion to Dismiss. [R. 8-1 at 2-3.]

## II

### A

When evaluating the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). Dismissal is ordinarily appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *DirecTV, Inc.*, 487 F.3d at 476 (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Moreover, the facts pled in support of the plaintiff's claims must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

To demonstrate facial plausibility, "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). These requirements "serve[] the practical purpose of preventing a plaintiff with 'a largely groundless claim' from 'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, 550 U.S. at 545-46 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

**B**

The Plaintiff's first claim, which concerns Kentucky's whistleblower protection for health care workers, fails at the pleading stage. By Fowler's own admission, Coast to Coast was not her employer; rather, the Defendant simply provided physicians to staff the hospital at which Fowler worked. Nevertheless, Fowler argues that the statute in question, KRS 216B.165, prohibits retaliation against an employee "regardless of whether or not that agent or employee is employed by the retaliating health care facility or service." [R. 6 at 3.] This statute provides, in relevant part:

> No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

KRS §216B.165(3). By its plain language, this provision prohibits any "health care facility or service licensed under this chapter" from retaliating against "any agent or employee who reports in good faith" concerns regarding quality of care. Fowler apparently contends that, because the statute refers to "any agent or employee"—without expressly stating that the employee must work for the "health care facility or service" referenced in the first clause of the same sentence—

4

her status as an employee of New Horizons, rather than Coast to Coast, is irrelevant.

This tortured construction of the statute, however, defies both the statutory language and common sense. The subject of this provision is the retaliating "health care facility or service," and the "agent and employee" in the subsequent clause directly corresponds to that subject. If the legislature envisioned no employment relationship between this "health care facility or service" and the "agent and employee," the Court struggles to determine why the statute uses the terms "agent and employee" at all. Given the close structural relationship between these two clauses, the Court will not presume that the legislature intended simply to refer to "any agent and employee" of any company in the world, regardless of her existing relationship with the subject of the provision. *Cf. Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629, 634 (Ky. App. 2013) (noting that courts must construe statutes "with a view to promote their objects and carry out the intent of the legislature," and should not interpret provisions in a way that would "lead to an absurd or wholly unreasonable conclusion.").[2] And this construction, too, is the only sensible interpretation of the statute for another readily apparent reason: if a defendant corporation never had the authority to terminate the plaintiff's employment, that defendant cannot be subject to a claim of retaliation premised on the plaintiff's termination. Thus, because KRS §216B.165(3) manifestly does not apply to non-employer third parties like Coast to Coast, the Court must dismiss Fowler's claim.

---

[2] This interpretation coheres with prior courts' understanding of the statute. *See, e.g., Macglashan v. ABS Lincs KY, Inc.*, 448 S.W.3d 792 (Ky. 2014) (holding that "KRS 216B.165(3) provides a kind of whistle-blower protection for health facility workers" that "prohibits a health care facility or service from retaliating against an employee who reports any deficiencies of the facility or service pursuant to KRS 216B.165(1)"); *MacGlashan v. ABS Lincs KY, Inc*., 84 F. Supp. 3d 595, 601 (W.D. Ky. 2015) (finding that KRS § 216B.165(3) prohibits "[a]n *employer* from discriminating against *an employee*") (emphasis added).

5

**C**

Fowler's second claim, however, easily satisfies the pleading requirements of Rule 12(b)(6).  Here, Fowler alleges that the "Defendant intentionally and improperly interfered with the business relationship between Plaintiff and New Horizons."  [R. 1 at 5.]  A claim for tortious interference with a business relationship "requires: (1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages."  *Halle v. Banner Industries of N.E., Inc.*, 453 S.W.3d 179, 187 (Ky. App. 2014) (citation omitted).  In the present case, Fowler claims that Coast to Coast "interfered with the business relationship between [her] and New Horizons by misrepresenting . . . that [she] had made 'slanderous and libelous comments . . . about Coast to Coast' and/or by threatening to terminate its relationship with New Horizons," ultimately resulting in a "loss of income and benefits."  [R. 1 at 5.]

Although this allegation directly tracks the elements of a claim for tortious interference with a business relationship, Coast to Coast nevertheless maintains that Kentucky law prohibits Fowler from bringing such a claim.  In support, the Defendant asserts that, "[w]here the relationship that forms the foundation for the intentional-interference claim is an employment relationship, Kentucky law requires a contract of employment."  [R. 7 at 5.]  Because Fowler was an at-will employee and thus cannot establish the existence of a valid employment contract, the Defendant argues that Fowler's intentional interference claim must fail.  The case cited in support of this proposition, however, plainly does not "require" the existence of a valid contract in all tortious interference claims arising out of an employment relationship.  Instead, this opinion—an unpublished federal case not binding on this Court—simply holds that, where a

6

plaintiff alleges intentional interference with *contractual relations*, he must prove the existence of a valid contract. *See Smith v. Caterpillar, Inc*., No. 05-CV-436-JBC, 2007 WL 98892, at *4 (E.D. Ky. Jan. 8, 2007) (citing *CMI, Inc. v. Intoximeters*, Inc., 918 F. Supp. 1068, 1079 (W.D. Ky. 1995)). Further, the case cited by *Caterpillar* to support this claim expressly distinguishes between (1) claims for tortious interference with contractual relations, which require the existence of a valid contract, and (2) claims for tortious interference with business relationships, which do not. *See CMI, Inc.*, 918 F. Supp. 1068, 1080.

Although the Defendant insists that "labeling [the Plaintiff's] at-will employment relationship a 'business relationship'" would create a "new and unprecedented exception to the at-will employment" doctrine, courts throughout the country have long recognized an at-will employee's right to bring an action for intentional interference with a business relationship. In *Forrester v. Stockstill*, 869 S.W.2d 328 (Tenn. 1994), for example, the Tennessee Supreme Court held that, by definition, an at-will employment agreement establishes a non-contractual, ongoing business relationship. *Id.* at 330. Thus, while "the discharge from employment of an employee-at-will by the employer is not actionable," the "wrongful interference with at-will employment by third persons is actionable." *Id.* at 331. Other states have reached similar conclusions. *See, e.g., Bagwell v. Peninsula Regl. Med. Ctr.,* 665 A.2d 297, 313-14 (Md. Spec. App. 1995) (recognizing at-will employee's claim for intentional interference with business relationship and noting the tort "lies where the wrongful conduct of the defendant interferes with the plaintiff's existing or anticipated economic relationships, notwithstanding the absence of a breach of contract."); *Huff v. Swartz,* 606 N.W.2d 461, 470 (Neb. 2000) ("[W]e hold that an at-will employment relationship can be the subject of a tort action for intentional interference with a business relationship."); *Smith v. Emery Air Freight Corp.,* 512 So. 2d 229, 230 (Fla. 3d Dist.

7

App. 1987) (presuming that claim for intentional interference with business relationship by at-will employee was actionable).

While it would appear Kentucky courts have not squarely addressed this question, Coast to Coast fails to cite, and the Court cannot identify, any legal authority to support the Defendant's claim that Fowler's at-will employment relationship should bar her claim of tortious interference. The Court adds, too, that such a conclusion would make little legal or practical sense. An at-will employment relationship, while not providing the protections afforded most contractual arrangements, undeniably constitutes a business relationship from which the employee benefits. To permit a third party to interfere with that relationship for any reason, even for the alleged purpose of intimidating or punishing those who challenge that party's conduct, would violate the spirit of the common-law doctrine of tortious interference.

### III

For the reasons explained above, the Court finds that (1) KRS §216B.165(3) does not apply to non-employer third parties like Coast to Coast, and (2) Fowler's claim of intentional interference with a business relationship satisfies the pleading requirements of Rule 12(b)(6). Accordingly, and being otherwise sufficiently advised, the Defendant's Motion to Dismiss **[R. 5.]** is **GRANTED IN PART**, and the Court **HEREBY ORDERS** as follows:

    1.    The Defendant's motion to dismiss Fowler's retaliation claim under KRS §216B.165(3) is **GRANTED**;

    2.    The Defendant's motion to dismiss Fowler's claim for tortious interference with a business relationship is **DENIED**; and

    3.    The Defendant's Motion for Limited Stay **[R. 8]** pending resolution of the Motion to Dismiss is **DENIED AS MOOT.**

This 8th day of February, 2016.



Gregory F. Van Tatenhove
United States District Judge

9